Filed 10/20/15  P. v. Davis CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>RODNEY HAWKINS DAVIS, JR.,<br><br>     Defendant and Appellant. | F068923<br><br>(Super. Ct. No. CRF41782)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Anne V. Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Rodney Hawkins Davis, Jr., was convicted at the conclusion of a jury trial of second degree commercial burglary (Pen. Code,[1] § 459).  One count of identity theft (§ 530.5, subd. (a)) was dismissed prior to trial.  The trial court denied defendant's oral and written motions for a new trial.  The court suspended imposition of sentence and placed defendant on felony probation for five years on various terms and conditions, including that he spend eight months in county jail.

On appeal, defendant contends the trial court deprived him of a fair trial by ruling a nonhearsay statement of a third party was inadmissible.  Defendant contends the trial court also erred in not permitting him to impeach the victim with evidence the victim offered defendant money to enter into a plea agreement.  Defendant argues the trial court erred in permitting him to be impeached with prior convictions without sanitizing them and there was cumulative error.

Defendant contends there was an error in the minute order granting him probation.  In a supplemental brief, defendant seeks relief from this court to modify his conviction from a felony to a misdemeanor pursuant to Proposition 47 and section 1170.18.  We affirm the judgment with instructions for the trial court to clarify its ruling granting defendant probation and without prejudice to defendant filing a motion with the trial court to recall his sentence pursuant to section 1170.18.

# FACTS

## *People's Case*

At 1:45 p.m. on July 20, 2013,[2] defendant and a woman who identified herself as Jessica Gomez or Gomes went to the Moccasin Point Marina at Lake Don Pedro to rent a jet ski for two hours from reservations clerk Jerri Souza.  Defendant paid $680 cash for a two-hour rental.  Neither defendant nor Gomez showed Souza any identification although

---

[1]Further statutory references are to the Penal Code unless otherwise indicated.

[2]Unless otherwise designated, all date references are to the year 2013.

they both executed liability release forms.  Defendant did not return the jet ski that evening.

Defendant returned around 8:30 a.m. the next morning.  As a courtesy, Souza switched the two-hour rental to a 24-hour rental.  Defendant asked to have some of his cash payment refunded so he could place the balance on his credit card.  Souza could not remember whether defendant identified the credit card as "a credit card" or "his credit card."

Defendant handed Souza a credit card.  Defendant and Gomez were not acting like other customers who usually want to get over the paperwork and onto the lake.  They were being chatty, interacting with each other, and not in a hurry to finish the paperwork.  These interactions were unusual enough that Souza would have remembered them even had an incident not happened.  Also, defendant and Gomez made a point of stating they were not a couple and were dating other people.  The banter was distracting and made it difficult for Souza to concentrate on the credit card transaction and move on.  There were other customers in the store.  Souza asked them to let her concentrate.

When Souza started to swipe the credit card, defendant and Gomez became very quiet and looked worried.  Prior to swiping the card, defendant and Gomez told her not to swipe it because it had not been working.  They told Souza she would have to manually enter the numbers.  After swiping the credit card, it came up with all X's and no name.  Souza had never seen this before.  After Souza entered the credit card numbers manually, the display showed the final numbers 8052 and the defendant's name.  The charge on the card was $494.60.

Souza generated a new invoice that defendant signed.  Defendant and Gomez became chatty and interactive again.  Souza never heard the name "Jay" mentioned in the conversation between defendant and Gomez.  About 3:30 p.m. that day, David Paravagna called to explain that someone had used his credit card at the facility.  Paravagna was very upset and told Souza the amount of the transaction was $494.60.  Paravagna gave

3.

Souza the last four numbers of his credit card. They were identical to those on the card used by defendant.

Souza gave Paravagna the number to the sheriff's department and she also contacted rangers from the lake recreation agency. The rangers directed Souza to contact the sheriff's department. Deputy Timothy Wertz contacted Souza and she told him what had happened and provided him with the paperwork from the transaction with defendant.

Paravagna lived in Walnut Creek and had a prior conviction in 2002 for assault and battery on a peace officer. On July 21, Paravagna was trying to make a purchase at Safeway and his credit card was declined. Paravagna used a bank application, or app, on his cell phone to check his credit card activity and discovered purchases had been made in Moccasin Point in Tuolumne County, at Wal-Mart twice, at Rite Aid, and at Carl's Jr. Paravagna contacted Moccasin Point about the charge on his credit card because he lived in Walnut Creek.

The woman with whom Paravagna talked to sounded panicked when he asked her about the charges on his credit card and at first shared no information. The woman called back later and provided more information, including that the suspect had been arrested. Paravagna provided her and law enforcement with the entire credit card number. A sheriff's deputy told Paravagna to get an affidavit of forgery from his bank.

Paravagna had replaced the old card with a new one. He recalled the old card had the last four numbers 8052 and the purchase from the jet ski vendor was $468 or $470. After refreshing his recollection, Paravagna verified the amount was $494.50. No one had Paravagna's permission to use his credit card or to rent anything at Moccasin Point on July 21. Paravagna did not know defendant, Jessica Gomez, or a Hispanic woman named Jay. No one else had access to Paravagna's credit card, which he kept in his wallet. Paravagna had been to the marina in the past, but never used his credit card there.

Tuolumne County Sheriff's Deputies Timothy Wertz and Robert Speers, on boat patrol on Don Pedro Lake on July 21, were dispatched to the Moccasin Point Marina that

4.

afternoon. There, they contacted Souza who told them about the incident and described defendant. The deputies soon found defendant. Wertz supervised the return of the jet ski and Speers talked to defendant. Defendant provided deputies with a phone number that was disconnected. Wertz recalled that defendant described his companion as his girlfriend. Wertz talked to Souza and Paravagna and the credit card numbers they each provided matched.

Prior to questioning defendant, Speers read defendant his *Miranda* rights from a department-issued card.[3] Defendant waived his rights and talked to Speers. Defendant said he had come to Tuolumne County with Erica and a woman he had been seeing for a couple of weeks whom he variously referred to as Jay Degair, Jay Degairy, and Jay Deguer. Defendant explained they had stopped at a store on the way to the lake and bought ice with the credit card.

After not bringing the jet ski back on time, defendant said he got a "sweet deal" on an extended rental. Jay told defendant to get their cash back and place the rental fees on the credit card. Defendant initially said his name was on the credit card. Defendant said Jay took the credit card to do some shopping at Wal-Mart after he rented the jet ski. Asked how Jay could go shopping with his credit card, defendant told Speers the card had Jay's name on it. Defendant then said he did not know what name was on the credit card but he "just knew" the card belonged to Jay. When Speers asked defendant why he was lying, defendant replied that some of what happened "was on him" because he signed the receipt. Defendant admitted he was the one who rented the jet ski.

A male and female came up to the marina after defendant was arrested and asked for property off the jet ski. The female asked for keys from defendant. Speers did not know the name of either person.

---

[3]*Miranda v. Arizona* (1966) 384 U.S. 436.

*Defense Evidence*

Defendant testified he went camping on July 20 with Jessica Gomez and her friends, Erica and Jay. Defendant had prior convictions for pimping and unlawful sex with a minor in 2005. Gomez, Jay, and Erica purchased snacks at Wal-Mart on the way to the lake, but defendant did not know how they paid for them. Defendant denied telling investigators he paid for anything with Jay's credit card.

Defendant went with Gomez to rent the jet ski on July 20. Defendant brought nearly $1,000 for the camping trip because he wanted to ride a jet ski. Defendant did not have a credit or debit card. After losing track of time and not returning the jet ski on the 20th, the group decided to change the rental to 24 hours.

The credit card used to change the rental agreement belonged to Jay, not defendant. Defendant denied his name was on the card, although he admitted he never looked at the card to see whose name was on it. Jay gave the card to Jessica Gomez at the campsite, who later gave it to defendant when they changed the rental agreement. Defendant believed he had permission to use the credit card. Gomez, not defendant, told Souza the card would not work if swiped. Defendant did not know there was anything wrong with the card until deputies told him the card was stolen.

Defendant was unsure of Jay's last name and denied he told anyone it was Deguer. Defendant has a friend named Valorie Deguair, but she was not with the camping party. Defendant never gave any officer a phone number, but Gomez did. Gomez and her boyfriend were the two people who retrieved property from the jet ski. Defendant could not explain why Gomez was not subpoenaed to testify at trial.

*Rebuttal Evidence*

Souza testified that Jay's name was not on the credit card used to pay for the jet ski rental and defendant's name was on the card. Souza would not have accepted the credit card if it had Jay's name on it. Speers testified that the woman who retrieved

6.

property from the jet ski was Jessica Valdez according to her driver's license. She did not identify herself as Jessica Gomez.

## DISCUSSION

### 1. Excluding Third Party Statement

Defendant contends the trial court erred in excluding a statement from "Jay" to defendant regarding Jay's authority to use the credit card because the statement was not hearsay and was relevant for an issue at trial. Although we find error in the trial court's ultimate ruling, we conclude it was harmless.

*Pretrial Motion*

Defense counsel sought to introduce evidence a third person, Jay, had the credit card and gave permission to defendant to use it to rent the jet ski. The prosecutor objected to the statement that Jay gave defendant permission to use the card because she was not under subpoena, it was hearsay offered for the truth of the matter, and there was no hearsay exception. Defense counsel replied the statement was admissible because it was proof of defendant's state of mind when he used the card, even if the card did not belong to Jay. According to defense counsel, Jay's statement was admissible to show its effect on the listener.

After arguing other matters, the court returned to the admissibility of Jay's statement to defendant. Defense counsel explained defendant would testify Jay gave the credit card to Jessica Gomez, and defendant used the card with Jay's permission. The prosecutor again objected this was hearsay with no applicable exception. The prosecutor argued it did not fit within the state of mind exception under Evidence Code section 1250 because that exception goes to the state of mind of the declarant, not to the listener's state of mind. The prosecutor further objected to the trustworthiness of the statement. Defense counsel insisted the statement was admissible to show its effect on the listener.

The court noted Jay's statement was not being offered for the truth of the matter asserted and was relevant. Finding the statement outside the purview of hearsay and

7.

admissible, the court held the declarant still had to be identifiable and asked defense counsel if defendant would be able to identify the person who made the statement. The only requirement the court imposed to admit the statement was the declarant's name, including the last name. The court stated it was concerned about the trustworthiness and reliability of the statement and that defendant relied on it.

### Trial Objections

Defendant did not give Jay's last name during his testimony. As defendant testified concerning how the group decided to rent the jet ski, the prosecutor objected to any part of defendant's testimony relying on hearsay. The trial court ruled defendant could describe how he rented the jet ski, but not to statements from others in the party. Defendant proceeded to testify the card belonged to Jay.

When asked how he came to use the card, the trial court sustained the prosecutor's hearsay objection and reminded defense counsel his ruling would stand until the court got "more information." Defendant testified he understood he was to use the card to pay for the jet ski the next day, he believed he had permission to use the card, and Jay gave the card to Jessica Gomez, who then gave the card to defendant.

### Analysis

During the in limine hearing, the trial court found the statement was not being offered for the truth of the matter asserted, but to show defendant's intent when he used the credit card to rent the jet ski. The trial court's ruling followed the principle that an out-of-court statement can be admitted for the nonhearsay purpose of showing it imparted information to the hearer, and the hearer, believing such information to be true, acted in conformity with that belief. The nonhearsay purpose must also be relevant to an issue in dispute. (*People v. Montes* (2014) 58 Cal.4th 809, 863.)

The trial court's concern, however, was with the trustworthiness of the statement, and it required defendant to give the full name of the declarant to ensure the statement was trustworthy. In so ruling, the trial court appeared to be following the requirement of

Evidence Code section 1252 holding that: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness." The article this section refers to is the one governing the use of hearsay. (Evid. Code, § 1200 et seq.)

Because the declarant Jay's statement was nonhearsay, the hearsay section and exceptions were not applicable, and the requirement of trustworthiness set forth in Evidence Code section 1252 does not appear to be applicable to the trial court's ruling. We find no reason why defendant had to provide Jay's entire name because the absence of a last name goes not to the admissibility of the statement but to the weight the jury should have accorded it.

Any error in excluding Jay's nonhearsay statement that she told defendant to use the credit card, however, was harmless under the standards set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 and *Chapman v. California* (1967) 386 U.S. 18. The evidence against defendant was far stronger than he argues in his opening brief. The victim, Paravagna, testified he discovered after his credit card had been denied during an attempted purchase that the card had been used at the Moccasin Point Marina and several other locations in Tuolumne County without his permission, and no one was authorized to use his credit card. Souza testified she later received a telephone call on the day of the credit card transaction from Paravagna who related to her the exact amount of the jet ski rental purchase.

Souza, the clerk at the marina, related a series of events that bring into question defendant's entire account. The card defendant handed to Souza had defendant's name on it, not the victim's name or Jay's name. It matched the identification defendant provided. Souza explained that had defendant presented a card with another person's name, she would not have accepted it.

Defendant and Gomez were very talkative prior to the credit card transaction, but became quiet as Souza attempted to swipe the card. They told Souza not to swipe the

9.

card because it would not work, though she swiped it anyway. After swiping the card, Souza saw X's show up where the credit card number and card holder's name would normally appear. She had never seen this happen before. Defendant and Gomez told Souza to key in the number of the credit card. Defendant's demeanor before and after Souza swiped the credit card was highly suspicious, as was the entire transaction.

Also, defendant testified his camping group decided to rent a jet ski and, more importantly, that Jay handed the credit card to Gomez, who in turn handed it to defendant prior to the credit card transaction. The most exculpatory evidence offered by defendant and the gravamen of Jay's actions was her act of handing off the credit card. The only reasonable implication of this conduct was that the card belonged to Jay, not to Gomez or defendant, and Jay had given them permission to use the card. The jury heard this key evidence, although without the accompanying statement telling defendant to use the credit card. We further note the substance of the challenged statement came into evidence through the testimony of Deputy Speers who testified defendant told him Jay directed him to get back the cash deposit and use the credit card for the extended jet ski rental.

Defendant testified Gomez, not defendant, told Souza the card would not work if swiped. Defendant did not know there was anything wrong with the card until deputies told him the card was stolen. Defendant inconsistently told Speers the credit card had his name on it and later said it had Jay's name on it. The jury was able to weigh the evidence advanced by the People and defendant and evaluate its credibility. We conclude the absence of the proffered testimony could not have changed the jury's verdict.

## 2.     Victim's Pretrial Encounter With Defendant

Defendant contends the trial court abused its discretion, violating his Sixth Amendment right to confrontation, when it excluded impeachment evidence regarding a pretrial encounter between him and Paravagna in the courthouse hallway. We do not agree.

10.

### Pretrial Hearing on Courthouse Encounter

As the trial was about to commence with jury selection, Paravagna encountered defendant in the hallway of the courthouse. Defense counsel brought a motion to introduce details of the encounter to impeach Paravagna, and the trial court conducted an in limine motion to determine the admissibility of the evidence.

The trial court viewed a video of the conversation between Paravagna and defendant without audio. The court noted the conversation took place over six minutes. The video reflected that Paravagna "reached into his left pocket and displayed some material" to defendant. A bailiff, Deputy Muriel Dutch, heard at least part of the conversation. According to Dutch, Paravagna said something like: "'Come on, Davis. Let's—make a plea. Let's get out of here.'"

As an offer of proof, defense counsel stated defendant would testify Paravagna came over, asked if defendant was Davis, and defendant replied affirmatively. Paravagna explained he was the one whose credit card was used, or that he was the victim. Paravagna told defendant he did not want to testify and stated he was only there because they would arrest him if he did not come. Paravagna told defendant he should take a deal. Paravagna said: "'What are you going to do for me? I'll take the 5th on the stand.'" Counsel explained that when Paravagna went through security, he took a large wad of cash out of his pocket and then put it back into his pocket. Defense counsel believed Paravagna threatened defendant to one of the officers who was going to testify and was asked to leave until 11:00 a.m.

While noting Paravagna's absurd behavior made him look like an idiot, the court asked defense counsel how Paravagna's conduct would impeach his testimony that his credit card was used without his permission. Defense counsel replied defendant would testify the third party, Jay, gave defendant permission to use the card. The court was unconvinced any of this information impeached Paravagna.

Deputy Wertz testified he spoke with Paravagna about the incident. Paravagna said he only told defendant to "just plead out, get rid of this" so he could go home. Wertz told Paravagna they rarely ever apprehend the suspect for these types of crimes. Paravagna told Wertz he did a good job and he was happy the person responsible got caught.

At the hearing, Valorie Deguair testified she was sitting in the courthouse hallway when the conversation between Paravagna and the deputy occurred. She heard the deputy mention he was the one who arrested defendant and Paravagna reply, "'Good job.'" The deputy told Paravagna he did not know why defendant was "trying to beat the case."

Deguair said she heard the conversation between defendant and Paravagna. Paravagna introduced himself to defendant as "'the guy whose credit card number it was'" and urged defendant to "'take the deal.'" Paravagna told defendant he was subpoenaed and had to be there. Paravagna asked defendant not to make him go onto the witness stand. Paravagna told defendant his credit card was denied as he tried to purchase diapers. Paravagna outlined the purchases made on his credit card and asked defendant to settle the case so he did not have to take the stand. Paravagna asked defendant what he had for Paravagna or what defendant could offer Paravagna.

Deguair further explained Paravagna said, ""We could take this outside and handle it, but I'm coming to you man to man, sitting right in front of you man to man.'" Paravagna continued, "'You need to just take the deal'" and "'[w]hat do you have to offer me?'" Defendant replied he had paid cash and was just trying to explain his case. Paravagna replied, "'That's not enough.'" According to Deguair, Paravagna pulled out a big wad of money from his pocket and showed it to defendant. Deputy Speers testified he was not present during these encounters, which occurred in the morning. That afternoon, Speers and Wertz saw Paravagna talking to a prosecution witness and told him to stop talking to people involved with the case.

12.

Defense counsel argued the incident was directly relevant to Paravagna's credibility. The prosecutor conceded there was some relevance to Paravagna's credibility, but argued the evidence was more prejudicial than probative and should be excluded pursuant to Evidence Code section 352.

The trial court ruled the consumption of time to present the evidence outweighed its relevance. The court did allow for the evidence to be admitted if Paravagna somehow opened the door during his testimony.

*Analysis*

The constitutional right to confrontation is guaranteed under both the United States and California Constitutions. The primary reason an accused is entitled to confront adverse witnesses is to permit cross-examination. (*People v. Brown* (2003) 31 Cal.4th 518, 538.) The right to cross-examine adverse witnesses includes the opportunity to question them on matters reflecting on their credibility. Judges retain wide latitude to impose reasonable limits on cross-examination. (*People v. Frye* (1998) 18 Cal.4th 894, 946, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 841-842.) Confrontation rights are not violated unless a defendant shows a prohibited cross-examination would have produced a significantly different impression of the witness's credibility. (*People v. Frye*, *supra*, at p. 946; *People v. Szadziewicz*, *supra*, at p. 842.)

A trial court has broad discretion under Evidence Code section 352 to exclude evidence if its probative value is substantially outweighed by the probability its admission will either necessitate undue consumption of time, or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. The trial court retains broad power to control the presentation of evidence to prevent criminal trials from descending into nitpicking wars of attrition over collateral credibility issues. Rulings under Evidence Code section 352 are evaluated on appeal using the abuse of discretion standard. (*People v. Riccardi* (2012) 54 Cal.4th 758, 808-809.) Although Evidence Code

13.

section 352 must yield to a defendant's due process right to a fair trial and to present all significant probative evidence to his or her defense, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right. (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.)

Here, the probative value of the excluded evidence was low because it did not have any effect on Paravagna's statements to Souza or investigators; these statements were corroborated by Souza and investigators. Also, defendant's case did not rest on Paravagna's credibility because defendant did not challenge the evidence establishing the credit card belonged to Paravagna. Instead, while acknowledging the card did not belong to him, defendant maintained the card was given to him by Jay.

Paravagna's statements to defendant and to Wertz during the courthouse hallway encounters indicate he clearly did not want to testify at trial and he related this to defendant. Paravagna was nervous on multiple occasions during his trial testimony.[4] However, in his encounter with defendant, he never indicated the allegations were false or exaggerated.

A mini-trial on Paravagna's encounter with defendant would have included evidence from Deputies Dutch and Wertz, and Valorie Deguair that Paravagna did not want to testify and Paravagna had urged defendant to accept a plea deal. Furthermore, evidence relating to a prior offer to plead guilty or of a prior guilty plea that was withdrawn is inadmissible in a criminal trial. (See Evid. Code, § 1153.) Evidence of the full encounter could have further included statements from Paravagna to Wertz that he did a good job in catching the culprit and Wertz's statement to Paravagna that they rarely catch perpetrators of credit card fraud. These statements would only have inculpated the defendant, confused the issues, and misled the jury.

---

[4]During his testimony, Paravagna talked quickly and apologized. He said, "I am a little nervous being up here, so—it is not my cup of tea." Later, the trial court asked Paravagna to slow down and Paravagna again said he was "a little nervous being up on the stand."

14.

According to defense counsel, defendant alone would have added to the facts that Paravagna offered defendant money for Paravagna to plead the Fifth Amendment. The statement that Paravagna would plead the Fifth Amendment makes no sense in the context of these proceedings and would not impeach Paravagna because Paravagna was not charged with any offense.

The statement in defense counsel's offer of proof that cash was offered to defendant was corroborated by Deguair, but not by Dutch. After reviewing the video of the encounter, which lasted about six minutes, the trial court stated that it looked as though Paravagna was pulling "material" out of his pocket. We have viewed the video, which is part of the record, and cannot conclusively determine what Paravagna did. Paravagna is sitting on a bench seat across from defendant, who is also seated. Paravagna is talking to defendant using animated hand and arm gestures. Toward the end of the conversation, Paravagna stands up, places his left hand into his left pants pocket, and briefly pulls something out of his pocket before placing it back and sitting down. Even if we assume Paravagna displayed cash to defendant, this would not necessarily cast Paravagna's credibility in a negative light. There could be multiple innocent explanations for Paravagna's conduct. Taking the time for the jury to hear those explanations, along with the time it would take to hear the negative connotations, would ultimately do little to impeach Paravagna, lead to confusion over the issues, and potentially mislead the jury.

We agree with the trial court's early assessment of Paravagna's encounter with defendant as absurd and casting Paravagna in a ridiculous light. Even though defendant couches the excluded evidence as substantial proof that undermined Paravagna's integrity and credibility, the exclusion of evidence of Paravagna's encounter with defendant, which was carefully considered by the trial court, ultimately involved a subsidiary point. Paravagna's testimony established there was unauthorized use of his credit card. Most other key elements of the prosecution's case were established by other witnesses. The

15.

trial court did not abuse its discretion in applying Evidence Code section 352 to foreclose a mini-trial on a collateral matter that would have had the strong potential to confuse the issues and mislead the jury.

The parties cite *People v. Ardoin* (2011) 196 Cal.App.4th 102, 121-122. In *Ardoin*, the trial court limited defense cross-examination of a prosecution witness who had engaged in violent acts and deceit. There was already evidence the witness had prior convictions and had other character flaws affecting her credibility. The excluded impeachment evidence added little more to the witness's profile. But the witness's testimony was corroborated on key points by other prosecution witnesses.

The court in *Ardoin* found no error in the trial court's application of Evidence Code section 352. Here, too, the strongest impeachment evidence against Paravagna was his prior felony conviction for assaulting a peace officer. This was presented to the jury. Also, Paravagna's testimony was corroborated by other prosecution witnesses. We apply the holding in *Ardoin* to this case and find no error in the trial court's application of Evidence Code section 352.

Furthermore, as discussed above concerning the alleged statement from Jay, the prosecution had a strong case. We are convinced, beyond a reasonable doubt, the jury's verdict would have been the same had the challenged evidence been presented to the jury. (*People v. Brown* (2003) 31 Cal.4th 518, 546.)

**3.      Sanitizing Defendant's Prior Convictions**

Defendant contends the trial court erred in failing to sanitize his prior convictions in 2005 for unlawful intercourse with a minor under 16 years by a person 21 years or older (§ 261.5, subd. (d)) and pimping (§ 266h, subd. (a)). Defendant argues the trial court should have sanitized these convictions prior to them being presented to the jury. Defendant argues the convictions were "relatively remote and … did not reflect directly on [his] honesty."

16.

Notably, although defendant made a motion to exclude his prior convictions, he did not include a request to have them sanitized. Also, to reduce the element of surprise to the jury, defense counsel asked defendant on direct examination if he had prior convictions for the above offenses, and he replied affirmatively. Because defendant introduced this testimony, he is subject to the doctrine of invited error. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1138-1139.)

Even if this issue was not subject to invited error, the trial court did not err in denying defendant's motion. The admissibility of past misconduct for impeachment depends on whether it is relevant to moral turpitude. Trial courts have broad discretion to admit or exclude convictions used for impeachment. In making a determination on the admissibility of such evidence, courts should consider whether the prior conduct or offenses reflect on a witness's honesty or veracity, if it is near or remote in time, if it is for the same or similar conduct as the charged offense, and the effect of its admission on the defendant's decision to testify. (*People v. Edwards* (2013) 57 Cal.4th 658, 721-722; *People v. Clark* (2011) 52 Cal.4th 856, 931-932.) The impeaching offense may postdate the charged offense. (*People v. Edwards*, *supra*, at p. 722.)

Prior convictions for pimping, pandering, and burglary can be used against a defendant to impeach his or her testimony in a prosecution for assault likely to cause great bodily injury with a great bodily injury enhancement. Engaging in conduct showing moral depravity, such as pimping, demonstrates a readiness to do evil and is admissible under Evidence Code section 210. Pimping and pandering are crimes of moral turpitude. (*People v. Jaimez* (1986) 184 Cal.App.3d 146, 148-150.) Unlawful sexual intercourse with a minor has also been found to be a crime of moral turpitude. (See *People v. Fulcher* (1987) 194 Cal.App.3d 749, 753.)

The prior convictions were not for the same or similar conduct as the charged offense and, as the People point out, there was little danger the jury would confuse the issues or consider the prior offenses as a propensity by defendant to commit the instant

17.

offense. The trial court instructed the jury pursuant to CALCRIM No. 303 that the prior convictions could only be considered for assessing the credibility or believability of the testimony and not for any other purpose. The instruction was not only directed to the testimony of defendant, but to Paravagna as well.

Convictions from 2005 were not too remote in time to be admissible. The prior convictions were eight years prior to the current offense. Prior convictions as far back as 20 years before the current offense have been found to be not too remote where there is other evidence the defendant has failed to lead a blameless life. (*People v. Green* (1995) 34 Cal.App.4th 165, 183; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 648.) According to the probation report, defendant was convicted of misdemeanor vandalism in 2011 and was still on probation for that offense when he committed the current crime. The jury was not informed of this misdemeanor conviction or defendant's probationary status. Defendant had not led a blameless life since committing the prior offenses. Given these facts, we do not find defendant's prior convictions to be too remote to be relevant.

Finally, defendant elected to testify at trial. The trial court's ruling did not negatively impact defendant's decision. We reject defendant's contentions that his prior convictions were too remote in time and did not directly reflect on his honesty. The trial court did not abuse its broad discretion to permit defendant's impeachment with unsanitized prior convictions. (*People v. Clark*, *supra*, 52 Cal.4th at p. 932.)

## 4. Cumulative Error

Defendant argues the cumulative effect of the alleged errors constituted a denial of his right to due process. A series of errors during trial, though independently harmless, may under some circumstances rise to the level of reversible and prejudicial error. Where there are a few harmless errors, considered individually or collectively, the doctrine of cumulative error does not apply. The defendant is entitled to a fair trial, not to a perfect one. (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 1009; *People v. Box* (2000) 23 Cal.4th 1153, 1214, disapproved on another ground in *People v. Martinez*

18.

(2010) 47 Cal.4th 911, 948, fn. 10.) The few errors occurring here were harmless, whether considered individually or collectively. We reject defendant's cumulative error argument.

**5. Correction of Minute Order**

After the proposed terms and conditions of probation, the probation officer's report requested under a separate section entitled "PROBATION FEES" that defendant pay $31.25 per month for probation supervision services. The minute order also has a section entitled "PROBATION FEES." This section, however, sets forth probation supervision services in the amount of $30.75 per month. In granting defendant probation, the court ordered defendant pay the probation fees set forth in the order granting probation.

Defendant contends the minute order of the sentencing hearing requires modification to clearly state the costs of probation supervision are not a condition of probation. Although the People argue otherwise, we agree with defendant.

The costs of probation supervision may not be made a condition of probation. (*People v. Flores* (2008) 169 Cal.App.4th 568, 578.) Here, the applicability of this fee as a condition of probation is ambiguous in the trial court's ruling, and the minute order should be clarified to indicate payment of the fees is not itself a condition of probation.

**6. Proposition 47 Contention**

Defendant contends the provisions of Proposition 47 enacted by the people at the November 4, 2014, General Election apply to his offense committed on July 21, 2013, and convert his offense of second degree burglary into shoplifting since the larceny did not exceed $950. The charge on Paravagna's credit card was only $494.60. Because the law created a retroactive procedure pursuant to section 1170.18, subdivision (a) to have a felony reduced to a misdemeanor, unless the court determines defendant presents an unreasonable risk of danger to public safety, defendant argues this court should order a modification of his conviction to a misdemeanor.

19.

The People reply defendant is not entitled to automatic reclassification and resentencing, but must file a petition for relief from the trial court pursuant to section 1170.18. We agree defendant is not entitled to automatic resentencing on direct appeal and decline to retroactively apply Proposition 47 to his case on this appeal. (*People v. Delapena* (2015) 238 Cal.App.4th 1414, 1425-1429; *People v. Lopez* (2015) 238 Cal.App.4th 177, 180-182; see *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-179 [defendant not entitled to retroactive application of changes to three strikes law on appeal without first petitioning trial court].)

We observe defendant's current felony conviction, however, is not a serious or violent felony as defined in sections 1192.7, subdivision (c), and 667.5, subdivision (c). Our opinion is issued without prejudice to defendant to pursue any remedies he may have before the trial court on remand to recall his sentence pursuant to section 1170.18.

## DISPOSITION

The case is remanded for the trial court to clarify that payment of the probation supervision fee is not a condition of defendant's probation. The judgment is affirmed without any prejudice to the rights defendant may have under section 1170.18 to petition the trial court for a recall of his sentence and resentencing.

_____

PEÑA, J.

WE CONCUR:


_____

LEVY, Acting P. J.


_____

KANE, J.


20.